And we'll move to, thank you both, the court will now move to case number two, U.S. v. Bernard Seidling. Ms. Seda, you may approach the lectern. Good morning, may it please the court. My name is Catherine Seda and I represent the appellant, Mr. Bernard Seidling. Today I will be addressing whether the trial court abused its discretion by denying Mr. Seidling's motion in limine and admitting irrelevant and prejudicial videos that painted a distorted picture of Mr. Seidling's health. I will also be addressing whether this amounted to harmful error. This court should reverse the judgment of the district court on all counts and remand for a new trial for three main reasons. First, the district court abused discretion by admitting irrelevant videos that painted a distorted picture of Mr. Seidling's health. Second, even assuming some marginal relevance, the video's limited probative value was substantially outweighed by the risk of unfair prejudice, needless cumulativeness, and misleading the  And lastly, this error was not harmless because without the prejudice caused by the videos, the government's case was significantly weaker. Turning to my first point, the district court in denying the motion in limine stated that the videos were necessary to show Mr. Seidling's health during the charge period of count two However, as this court has pointed out in United States v. Ozuna, evidence that falls outside of the relevant time frame and lacks a sufficient nexus to the elements of the offense and thus risks confusing the jury, is properly excluded. What would be the standard of review for us to answer this question? It would be abuse of discretion, your honor. And so the contention is, Theod, by admitting these videos, are you referencing all four of them? Or you want to break them up by timelines? However, as far as abuse of discretion, we're asking, you're asking the court to find that admitting all of them was an abuse because they were irrelevant. Yes, your honor. We are asking that the court find that it was an abuse of discretion to admit all the videos listed on the motion in limine filed by Mr. Seidling. Here nine of the 11 videos were from outside of the time frame and the government presented no evidence and made no argument that the defendant's health conditions were the kinds of conditions where recovery was impossible, nor did the government point out what that recovery would have looked like, nor what the onset would have looked like. They made no connection from these videos from outside of the time frame to the charge count of count two. So the videos were both from- And how far outside the time frame were they counted? The videos were from different times. From outside of the time frame for the Duck Key Club videos, those were eight months from when count two ended, and about a year and a half from when count two started. For the Menards videos, it was two months. For the Truist videos, it was about a week before count two started. And for the Johnson Financial videos, it was 10 months after count two ended, and again, about a year and a half since count two started. Additionally, if the videos were really meant to show Mr. Seidling's health and demeanor, the court would not have admitted five of the nine videos at a modified speed, about six to 15 times the original speed of the videos, while the defendant was active. Because the videos were both from outside of the time frame and were sped up, they cannot say anything about Mr. Seidling's health or demeanor during the count two charge period. Would that go to the weight? Your Honor, while I would normally agree that this would go to the weight the jury can give the videos, here the videos were also prejudicial and misleading, not allowing for the jury to have a clear and objective understanding of the videos. The videos were prejudicial and misleading in two key ways. They caused the jury to perceive that the videos were either from inside of the count two time period, or that they were- But weren't there timestamps on the videos themselves? Some of the videos had timestamps, Your Honor. Right. In the video of Mr. Seidling, is it Seidling or Sidling? I believe it's Seidling, Your Honor. Seidling. Thank you. The video of him riding his bicycle with his tennis racket, walking to the courts, what time was the date of that video? Yes, Your Honor. I believe the date of that video was either January 5th, 2024 or January 13th, 2024. Okay. And those did have timestamps, however, the printed date was in small text and it was a white text, which was the same color as the backdrop of the video, making it difficult for a jury to be able to decipher what date that was exactly. But doesn't the, Catherine Eisman, doesn't she give somewhat context to the bicycle videos that Judge Maldonado referenced by the testimony explaining what the jury is seeing in 2024 versus what she had seen in 2022 and 2024 when playing tennis with your client? Yes, Your Honor. Ms. Eshman does speak about playing tennis with my client, however, her statements about playing tennis with Mr. Seidling are a broad general 2022 statement. She doesn't state when in 2022 she played tennis with Mr. Seidling, and she does state that the videos are from 2024, however, she had no personal knowledge as to his... She played tennis with him and I think she described him as a, quote, aggressive player. Is that right? Yes, Your Honor. Yeah. She said the difference between, I think, the video and how she experienced him was that maybe he was wearing a knee brace and or a shoulder brace during the charging period. Is that correct? Your Honor, it is not clear whether Ms. Eshman played tennis with him during the charging period, but she did state that in the general 2022 vicinity he had some sort of orthopedic brace that was different from the videos in 2024. But he was still an aggressive tennis player? That was her testimony, yes, Your Honor. The videos are also cumulative. The videos that were from outside of the time frame didn't add anything to the record that was not already established by witness testimony or business records or bank records of any sort. The only new thing that the videos added was that inducement of prejudice to the jury into believing that Mr. Seidling... That these videos were either from the time frame from when Mr. Seidling was charged or that the videos were somehow analogous to Mr. Seidling's health or demeanor when the government made no argument that they were. Lastly, I would like to turn to harmless error. The distorted picture created by the admission of the irrelevant and prejudicial videos amounted to harmful error because it made the government's case significantly more persuasive. And on that basis of that distortion, Mr. Seidling was convicted. Now just to remind the court, nine of the 11 videos were from outside of the charge period for count two. And additionally, the government's... None of the government's witnesses saw or interacted with the defendant during the charge period. But wasn't there testimony from the trial that while he was representing to the federal court that he was unwell, needed to stay proceedings, he was also actively litigating in state court? Yes, Your Honor. That was a testimony that was admitted at trial. However, the state court proceedings were done the majority of the time through Zoom or phone calls, something that somebody that is ill could have done from the comfort of their own home. So is the representation that the count two in particular, that it was a delay tactic on behalf of your client, is a suggestion that the videos would demonstrate or be unable to demonstrate his physical capacity? Yes. Yes. The argument... Yes, Your Honor. The argument is that the videos are from outside of the timeframe and can't say anything about the defendant's actual health or demeanor during the charge two timeframe. And the government also points to Mr. Seidling's banking activity and states that this is enough to establish count two. They point to 136 mobile banking transactions and seven counter deposits. However, count two alleges that Mr. Seidling lied about his health in order to defraud the bankruptcy court. So whether he later made transactions doesn't say anything about whether he was actually ill. If anything, the fact that only 5% of those transactions were in person tends to show that Mr. Seidling was in fact ill and could not leave his home. And lastly, the jury was given no limiting instruction, allowing them full discretion to interpret the videos however they saw fit. Counsel, I notice you're into your rebuttal time. Would you like to save some time for rebuttal? That is my last point, Your Honor. So for the foregoing reasons, we respectfully request that this court reverse the judgment of the district court and remand. So no, you would not like to? Yes, I would. Thank you, Your Honor. All right. Good morning. Good morning. May it please the court. Good morning, Your Honor. My name is Megan Stelgis, and I represent the United States. After a three-day trial, a jury convicted defendant on three counts. One, misrepresenting his financial condition on his bankruptcy schedules. Count two, falsely stating that he was incapacitated and could not proceed with the bankruptcy. And on count three, which has an overlapping time period with count two, moving hundreds of thousands of dollars in violation of the bankruptcy court's injunction not to transfer assets while the proceeding was going on. The evidentiary issue in this appeal affects only count two. And as I'll explain, the district court did not abuse its discretion by admitting the videos with respect to that count. And I want to start by talking about the time frame. In here, it's important to keep two things separate. One, there's... Ms. Stelgis, just so that we can frame this appropriately, was the incapacitation question limited to mental capacity? His representations were that he could not concentrate, he could not be productive in a reasonable manner, and that he wasn't competent to testify under oath. As background, he did raise a few physical issues, that he was at constant risk of falling. But the focus of the allegations are about his ability to litigate, essentially, to have the concentration and the wherewithal to go forward with this bankruptcy case. All right. And so from a timing standpoint, we know that there was a filing in the bankruptcy court and the case was, I believe, transferred from maybe a Chapter 11 to a Chapter 7. And so as far as the timing, when were the mental concerns or allegations raised by Mr. Sidney? It was after the conversion. So the bankruptcy court converted the case from a reorganization under Chapter 11 to a liquidation under Chapter 7. And that's when Mr. Seidling started to say that he was too incapacitated to proceed with the bankruptcy. So there are two things... You need to keep two things separate when thinking about the time frame. There's the period of Mr. Seidling's alleged capacitation, and there's the narrower period of time where he's making representations to the bankruptcy court and the district court about his incapacitation. That time period is December 19, 2022 to April 25, 2023. A defendant says that... Twenty-three? Twenty-three. Defendant says that the videos can only be admitted if they fall within that narrower time period, but that's not right given the breadth of the representations Mr. Seidling was making to the courts. He said that he was gravely ill and that these problems began way back in 2020 with a hospitalization. He contracted COVID, which he believed turned into long COVID. He started experiencing strokes in 2022. By 2023, his health was failing and he was going downhill. And for all these reasons, he was incapacitated and couldn't go through with his bankruptcy case. To disprove those statements, the district court properly admitted videos from outside the charged time period because those representations concerned his health problems that spanned outside the narrower time period charged in count two. Just as an example, the Truist Bank video. It comes from about a week before Mr. Seidling starts making representations about his health to the federal courts. That's the time when he sort of... Is this the withdrawals? I want to make sure I have the right thing. This was a counter deposit at Truist Bank. A counter, mm-hmm. Yep. This was right during the time when he was supposedly having the strokes that led him to seek the stay of proceedings a week later. So the district court didn't abuse its discretion in admitting that video. Next, I want to talk about the editing of the videos. The government did speed up some portions of some videos to save time, but the increased speed did not hide or distort anything. It's not as if the government fast-forwarded over a defendant falling or having a medical episode. It fast-forwarded through relatively benign portions of the video, and I'll use the videos from Menards as an example. Mr. Seidling made a few trips to Menards where he purchased items in the store and at the lumber yard. While the Menards witness was testifying, the government sped up the video when Mr. Seidling was standing at the register facing away from the camera, when a Menards lumber yard attendant was looking in the back of his van, and when Mr. Seidling was driving away. There's nothing confusing or misleading about increasing the time during this type of footage particularly when the video itself shows the increased speed. Was there audio? There was not. In any of the nine videos, were there audio that the jury would have missed? No, I don't believe so. The last point I want to touch on is harmless error. There was overwhelming evidence of defendant's guilt on count two. There's the banking activity that overlapped. There's overlapping time periods on count two and count three. The banking activity is not just relevant to show that Mr. Seidling was physically capable of moving money, whether that's in person or on a mobile app. It's relevant to show why he was telling the federal court that he was too ill to proceed. During this time, he was moving hundreds of thousands of dollars to new bank accounts. He was withdrawing cash. A million dollars of it ended up in a crawl space under his house. Someone who's too incapacitated to do some basic things in federal court not only can't do this type of banking activity, but that evidence shows why he was doing it. He was doing it to defraud the bankruptcy trustee. And the best evidence on count two, in my opinion, is that Mr. Seidling, while he's telling the federal courts that he's incapacitated and can't go forward with his case, is litigating four separate cases in state court. He's filing motions. He's making arguments. He's assigning claims. And he's trying to take the deposition of a process server. Now, the things he was being asked to do in federal court were not harder than the things he was already doing in state court. For example, the U.S. trustee had been asking him to produce documents about his trusts and partnerships so that she could determine his true financial condition. Those documents weren't hard to find. They were actually found at his house when the FBI executed a search warrant there. But Mr. Seidling just simply chose not to provide them. He was being asked to attend a meeting of creditors that could have been done by Zoom, just like the state court appearances. And he was being asked to file a brief in support of his appeal concerning the conversion in district court. E-filing is available in district court just like it is in the state court cases. He wasn't being asked to do anything more tasking in federal court than he was in state court. Unless there are any other questions, I would rest on the brief and ask the court to affirm. Thank you, counsel. Ms. Seda, rebuttal. Thank you, Your Honor. Quick clarification. The time frames for count two and count three do not overlap, just for clarity for the court. December 19, 2022 to April 25, 2023 is the time frame for count two. And December 29, 2023 to June 5, 2024 is the time frame for count three. Additionally, I would also like to clarify to this court that we are not asking for a bright line rule, that anything outside of the time frame for the videos or for the charge period is per se inadmissible, just that the government made no argument as to how those work. They are not connected. Additionally, the government has stated that the videos were sped up solely for the purpose of saving time or were done in times where it didn't harm the defendant. However, during the Johnson financial videos, the speeding up happened while he was speaking to the clerk, actively standing and sitting down, and then making rounds across the bank, getting a cup of coffee, coming back, and then doing it over again. So this speeding up of six to 15 times speed, respectively, was happening while the defendant was active. And in these videos, the date was not properly labeled on it whatsoever. I believe they had no label whatsoever stating the date. So for those foregoing reasons, we respectfully request that this court reverse the decision of the lower court on all counts and remand for a new trial. Thank you very much. All right. The court will take the case under advisement. And I just want to thank Ms. Seda for your representation this morning as well. Counsel, thank you, Ms. Howes, for your representation as well. Thank you.